UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CAROL GODDARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:14-CV-1758-WTL-DML |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF COMMISSIONER'S DECISION**

**STATEMENT OF THE CASE**

Plaintiff Carol Goddard challenges the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security (Commissioner), that denied her applications for disability insurance benefits (DIB) and supplemental security income (SSI). Plaintiff requested a hearing before an Administrative Law Judge (ALJ) after her applications were denied initially and upon reconsideration. In October 2012, Plaintiff, who was represented by counsel, testified at a hearing (Tr. 15, 71-95). Shortly thereafter, the ALJ sent interrogatories to an impartial vocational expert (VE); the VE's responses were proffered to Plaintiff, who requested a supplemental hearing, which was held in May 2013 (Tr. 15, 32-70).

In June 2013, an ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a restricted range of light work (Tr. 21). Relying of the testimony of the VE, the ALJ concluded at step four of the sequential evaluation process that Plaintiff was not disabled because she could still perform six of her old jobs that qualified as "past relevant work" (Tr. 24). In August 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's

decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff then filed suit pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## ARGUMENT

Plaintiff alleges that she became disabled on May 13, 2011 (Tr. 17). As the ALJ noted and Plaintiff acknowledges in her opening brief, she complained of chronic pain and fatigue for years prior to her alleged onset date. *See* Pl. Br. 8 ("Carol says that her mid back, lower back and neck has been hurting for years"); Tr. 22 (ALJ explaining that Plaintiff's pain and fatigue far pre-dated her alleged onset date). However, Plaintiff worked full-time with her impairments and symptoms for years, and earned above the level of substantial gainful activity (SGA) as late as January 2011 (Tr. 22). Given the lack of credible evidence that Plaintiff's symptoms worsened after her alleged onset date, the ALJ reasonably concluded that her various impairments would not prevent her from doing her past work, such as receptionist, inventory clerk, and customer service clerk (Tr. 24). *See Castile v. Astrue*, 617 F.3d 923, 927-28 (7th Cir. 2010) (claimant's employment was "a factor supporting the ALJ's determination"); *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (work activity cut against claimant's testimony that he was unable to work); *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 276-77 (7th Cir. 2010) ("Although a claimant with a job may still be found disabled," that possibility does not mean it is true in most cases)

Plaintiff argues that the ALJ did not consider the effects of her medical impairments, but the ALJ found (1) that Plaintiff had all of these impairments while she was working (17-18, 21) and (2) Plaintiff could perform her past relevant work (Tr. 24). It was incumbent on Plaintiff to show how her impairments, which did not previously prevent her from working, now prevented her from doing her past work as she did it or as generally performed in the national economy. *See* 20 C.F.R. § 404.1560. However, Plaintiff's opening brief largely proves the ALJ's point by

citing evidence as early as 2005 and 2006 that she was supposedly unable to perform light work due to pain and other symptoms. *See* Pl. Br. 8 (*citing* Tr. 520-23, 564, 611-34, 659).

        A.        **Substantial Evidence Supports the ALJ's Findings at Step Two**

Regarding step 2, "[a]s long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process. . . . Therefore, the step two determination of severity is merely a threshold requirement." *Curvin v. Colvin*, 778 F.3d 645, 648 (7th Cir. 2015) (internal quotations omitted). Here, the ALJ found that Plaintiff had a severe impairment and proceeded to the next step of the sequential evaluation process (Tr. 17-19). The ALJ further explained that Plaintiff's non-severe impairments had been with her for years, had not previously limited her ability to work, and had not worsened since the alleged onset date (Tr. 17-18). As explained below, Plaintiff has not shown that any of her non-severe impairments would limit her more than the ALJ found. In short, the ALJ did not err at step two of the sequential evaluation process because she proceeded to the next step of the process. *See Curvin*, 778 F.3d at 648; *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010).

Plaintiff argues that the ALJ erred in finding that her mental impairments were not severe. Pl. Br. 20. However, Plaintiff does not address the regulatory criteria for determining severity or address the ALJ's reasoning. In this regard, the regulations set forth a "special technique" for assessing mental impairments at 20 C.F.R. § 404.1520a. At steps two and three of the sequential process, the claimant is rated in four broad functional areas—daily activities; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The degree of limitation in the first three areas is rated on a "five-point scale: none, mild, moderate, marked and extreme," and "[t]he degree of limitation for episodes of decompensation is rated on a four-point scale." *Id.* § 404.1520a(c)(4). If the claimant's degree of

limitation is rated "in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area," then the mental impairment is typically found not severe. *Id.* § 404.1520a(d)(1). Here, the ALJ rated Plaintiff as having no restriction in activities of daily living, no difficulties in social functioning, mild difficulties in concentration, persistence, or pace, and no episodes of decompensation. Tr. 19-20. As noted above, these ratings support the conclusion that a claimant's mental impairment is not severe. 20 C.F.R. § 404.1520a(d)(1).

"Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R., Part 404, Subpart P, App. 1, § 12.00(C)(1). In assessing the degree of restriction in this area, the ALJ explained that Plaintiff had no problems with hygiene and grooming, she cared for her dogs, walked around, used the computer, did ordinary chores, socialized, and read (Tr. 19). Plaintiff does not explain why she deserved a rating of at least moderate restriction in this category.

Social functioning "includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." 20 C.F.R., Part 404, Subpart P, App. 1, § 12.00(C)(2). The ALJ found that Plaintiff talked with friends and family regularly, she had no problems conversing with medical sources, and had no history of difficulty getting along with others in the workplace (Tr. 19). Plaintiff does not identify record evidence that would support a rating of at least moderate restriction in this category.

Concentration, persistence, or pace "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks." 20 C.F.R., Part 404, Subpart P, App. 1, § 12.00(C)(2). The ALJ found that Plaintiff could pay bills, watch television, and read for extended periods of time without difficulty (Tr. 19). She did not

need reminders to take medications or attend appointments (Tr. 19). Plaintiff acknowledged that she could pay attention for 30 minutes at a time and had no problems following instructions at medical appointments (Tr. 20). She displayed intact remote memory and generally intact recent memory on mental status examination (Tr. 20). Plaintiff had two scores on memory testing that were low average, but otherwise had average memory abilities (Tr. 20). She did not complain of memory loss to her doctors and a June 2011 neurologic examination, performed shortly after the alleged onset date, showed grossly intact memory, attention span, and concentration (Tr. 20, 374). Thus, the ALJ considered the test results, and reasonably concluded that two low average sub-scores did not warrant a rating of at least moderate limitations in this domain (Tr. 20).

Finally, the ALJ determined that Plaintiff had no episodes of decompensation (Tr. 20). Plaintiff does not challenge that finding on appeal. Instead, she relies on a Global Assessment of Functioning (GAF) score that was merely a snapshot of a particular moment and does not correlate with any specific work-related limitations of function (Tr. 19-20). In this vein, the agency has explained that "[t]he GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings." 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000). While some of the GAF criteria may relate to the paragraph B criteria, a GAF score is not based on the same rating scale, it does not explain why a particular score was assigned, and it does not indicate specific functional limitations that affect the claimant's ability to work. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (GAF score "does not reflect the clinician's opinion of functional capacity"); *Macklin v. Colvin*, 2013 WL 5701048, *10 (S.D. Ind. Oct. 18, 2013).

     **B.**    **Substantial Evidence Supports the ALJ's Findings at Step Three**

The Listings streamline the agency's decision-making process by identifying those claimants whose impairments are so severe that they would "prevent an adult, regardless of his

age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). A claimant "first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing." *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009). An "impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530.

Here, the ALJ considered whether Plaintiff's impairments met Listing 1.02 (major dysfunction of a joint), 14.06 (connective tissue disease), and 14.09 (inflammatory arthritis), the relevant listings for Plaintiff's severe impairments of osteoarthritis and fibromyalgia (Tr. 20-21). And the ALJ also explained, subsequent in the opinion, why Plaintiff did not need to use an assistive device, did not have significant problems with manipulation, and had overstated her symptoms from fibromyalgia (Tr. 21-24). This discussion, read in conjunction with the ALJ considering the relevant listings, was sufficient at step three. *See Curvin*, 778 F.3d at 648 ("[T]he ALJ provided the discussion of Curvin's severe and non-severe impairments, the objective medical evidence, and her credibility directly after step 3 when he determined her RFC. This discussion provides the necessary detail to review the ALJ's step 3 determination in a meaningful way. We do not discount it simply because it appears elsewhere in the decision. To require the ALJ to repeat such a discussion throughout his decision would be redundant.") (*citing Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004)).

With respect to Listing 1.02, the ALJ found that Plaintiff's impairments did not render her unable to ambulate effectively or perform fine and gross movements (Tr. 20), which are the essential requirements of the listing. *See* 20 C.F.R., Part 404, Subpart P, App. 1, § 1.02. The ALJ's finding finds support the opinions of the state agency medical consultants, who opined that Plaintiff's physical impairments did not meet or medically equal a listing (Tr. 96-99, 406,

479). *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (holding that the "Disability Determination and Transmittal forms . . . conclusively establish that consideration by a physician designated by the Commissioner has been given to the question of medical equivalence"). In addition, Plaintiff does not discuss Listing 1.02, much less show how her combined impairments meet or equal its requirements. *See Knox*, 327 F. App'x at 655. Thus, "none of the evidence that [Plaintiff] contends the ALJ ignored or misstated establishes that her impairments met or equaled in severity" a listed impairment. *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002).

There is no listing for fibromyalgia; accordingly, at step three, the relevant inquiry is whether it medically equals a listing, such as "listing 14.09D in the listing for inflammatory arthritis." Social Security Ruling 12-2p. The ALJ considered Listing 14.09 (Tr. 21), and her findings about ambulation and fine/gross motor activity show why Plaintiff does not meet this listing (the paragraph "A" severity criteria are the same as those in Listing 1.02). *Compare* 20 C.F.R., Part 404, Subpart P, App. 1, § 14.09(A) *with id.*, § 1.02. The ALJ also found that Plaintiff had mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace (Tr. 19-20). These findings explain why Plaintiff's fibromyalgia did not satisfy the severity requirements of paragraph "D," which require a marked limitation in one of these functional domains. *See* 20 C.F.R., Part 404, Subpart P, App. 1, § 14.09(D). Again, Plaintiff does not point to evidence that she meets or medically equals a listing, so the ALJ's discussion of the relevant listings and evidence was sufficient. *See Curvin*, 778 F.3d at 650.

    **C.**    **Substantial Evidence Supports the ALJ's RFC Finding**

After step three of the sequential evaluation process, the ALJ determines the claimant's residual functional capacity, which is the most a claimant can do despite her impairments and limitations. *See* 20 C.F.R. § 404.1545(a); Social Security Ruling 96-8p. This finding is

conclusive if supported by substantial evidence. *See Curvin*, 778 F.3d at 650-51; *see also Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013) ("Our task is to determine whether substantial evidence supports the ALJ's RFC conclusion."). Moreover, Plaintiff has the burden of showing that her work-related limitations exceeded those in the ALJ's RFC finding. *See, e.g.*, *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 512 n.3 (7th Cir. 1999). Here, however, Plaintiff has not shown that she is unable to do a restricted range of light work (Tr. 21). *See, e.g.*, *Pepper*, 712 F.3d at 363 (claimant's limitations not inconsistent with central tasks of light work). Thus, the ALJ's discussion of Plaintiff's "RFC is similar in its level of detail to that done" in *Pepper*, which was consistent with precedent that "an ALJ's adequate discussion of the issues need not contain a complete evaluation of every piece of evidence." *Curvin*, 778 F.3d at 650.

### 1. The ALJ's Credibility Determination Was Not Patently Wrong

The regulations establish a two-step process for evaluating the credibility of symptoms (a claimant's statements about pain and other limitations). *See* 20 C.F.R. § 416.929. First, an ALJ should determine whether the claimant's medically determinable impairments "could reasonably be expected to produce" the alleged symptoms, such as pain. If the claimant's impairments satisfy this first requirement, the ALJ then considers the entire record and determines the degree to which those symptoms limit the claimant's "capacity for work." 20 C.F.R. § 404.1529(c)(1). An ALJ's credibility finding should be sustained unless it is "patently wrong," *Powers v. Apfel*, 207 F.3d 431, 435–36 (7th Cir. 2000), meaning that it "lacks any explanation or support," *Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008); *see also Pepper*, 361 F.3d at 367-68.

Here, the ALJ gave Plaintiff the benefit of the doubt in finding that she could only perform light work, even though no doctor opined that she was this limited (Tr. 21). In this regard, the VE testified that Plaintiff's past relevant work was actually performed at the medium

exertional level (Tr. 25), and no doctor opined that Plaintiff was unable to perform light work. *See Castile*, 617 F.3d at 929 ("It was because of and not in spite of [his] testimony that the ALJ limited [him] to a more restrictive [RFC] finding than any physician on the record."); *Schmidt v. Astrue*, 496 F.3d 833, 844 (7th Cir. 2007) (the "ALJ did not totally discount [the claimant's] testimony . . . as evinced by the ALJ's decision to limit [her] range of work"). Thus, the ALJ gave some credit to Plaintiff's subjective allegations of pain and work-related limitations.

The first reason provided by the ALJ for discounting Plaintiff's symptoms was that her clinical examinations did not indicate significant limitations (Tr. 22-23). "Although an ALJ may not ignore a claimant's subjective reports of pain simply because they are not supported by the medical evidence, discrepancies between the objective evidence and self-reports may suggest symptom exaggeration." *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010). Here, the ALJ explained that Plaintiff claimed she could only stand for 5-10 minutes (Tr. 21), yet, on clinical examination, she could stand on heels and toes, squat, tandem walk, and get on and off of the examination table without difficulty (Tr. 22). Plaintiff alleged that she difficulty lifting (Tr. 21), even though clinical examinations showed 5/5 strength, normal neurological functioning, and full range of motion in her spine and lower and upper extremities (Tr. 22). She testified about an inability to grasp or use fine fingering skills (Tr. 21), but her gross and fine finger manipulations were grossly normal and she did not display atrophy from disuse of her hands or anything else (Tr. 23). And Plaintiff claimed she needed to use an assistive device (Tr. 23), but clinical examinations showed a normal gait and posture and no difficulty walking (Tr. 22). Thus, the ALJ fairly considered the lack of supporting medical evidence in discounting Plaintiff's subjective symptoms. *See Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (rejecting claim that "an ALJ can never consider the lack of objective evidence in rejecting a claimant's subjective complaints"

because it "would nullify 20 C.F.R. § 404.1529(c)(2) and (4), which require an ALJ to consider the objective medical evidence").

The ALJ further explained that "the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision" (Tr. 23). This was a valid consideration in assessing Plaintiff's credibility. *See Pepper*, 712 F.3d at 362-63 (no doctor opined the claimant could not "perform the central tasks of light work"); *Jones*, 623 F.3d at 1161 (finding it pertinent that "none of [the claimant's] treating physicians opined that she was disabled"); *Castile*, 617 F.3d at 927 ("The ALJ found it illuminating and persuasive on its face that none of Castile's doctors opined that she was unable to work."); *Rice*, 384 F.3d at 370-71 ("More importantly, there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ."). Plaintiff says that the lack of an opinion is due to her doctor not providing functional capacity evaluations. Pl. Br. 18. But the fact remains that no treating source indicated that Plaintiff was more limited than the ALJ found, which the foregoing precedents suggest is "illuminating and persuasive on its face." *Castile*, 617 F.3d at 927.

The third reason provided by the ALJ was that Plaintiff's daily activities were not severely restricted by her impairments (Tr. 19, 23). The ALJ found that Plaintiff's "level of functioning was not consistent" with her "alleged limitations." Plaintiff claimed she could not concentrate (Tr. 21), but conceded "she might read up to four hours a day" (Tr. 20). Plaintiff stated that she could not stand for more than 5-10 minutes (Tr. 21), yet was able to care for a dog, do shopping and chores, prepare meals, and attend medical appointments alone (Tr. 19). And Plaintiff alleged great difficulty using her hands (Tr. 21), but she could cook, drive, use a computer, do household chores, and work as a cashier as recently as January 2011 (Tr. 19). Thus,

the ALJ reasonably considered Plaintiff's daily activities in finding that she was not as limited as she claimed. *See Lewis v. Comm'r of Soc. Sec.*, No. 12-241, 2013 WL 4670202, *7 (N.D. Ind. Aug. 30, 2013) (the ALJ "merely pointed to those activities as evidence" that the claimant wasn't as limited as she claimed, which is a "crucial difference . . . that separates this case from cases" where the rejected credible evidence on the basis of a claimant's limited daily activities) (*citing Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012)).

The ALJ also considered Plaintiff's course of treatment, which did not include even simple remedies such as exercise (a common treatment for fibromyalgia) or hot/cold therapy for swelling and pain (Tr. 23). Plaintiff claims that she did not have insurance and could not afford medical treatment. Pl. Br. 18. However, this does not explain why she did not use low-cost remedies cited by the ALJ, such as heat, ice, and exercise (Tr. 23). Moreover, the ALJ asked Plaintiff about her treatment history at the hearing, and pointed out that she was still able to obtain prescription medications and had several medical appointments since she claimed to have lost her medical insurance in May 2011 (Tr. 80-81). The agency's rulings do not require that the ALJ make a specific finding in the written decision so long as the excuse is considered, which it was here at the administrative hearing. *See* Social Security Ruling 96-7p. And, consistent with the ALJ's statement at the hearing, the record shows that Plaintiff had a CT scan in July 2011 (Tr. 692) and she was treated at St. Vincent's in August 2011 (Tr. 699). Finally, a Plaintiff cannot simply plead poverty to explain the conservative course of treatment. *See Wiggins v. Apfel*, 29 F.Supp.2d 486, 494 (N.D. Ill. 1998) ( a claimant "must do something more than merely plead poverty at the hearing"); *Osborne v. Barnhart*, 316 F.3d 809, 812 (8th Cir. 2003) ("lack of insurance" deemed inadequate explanation); *Craig v. Chater*, 943 F. Supp. 1184, 1190 (W.D. Mo. 1996) ("Financial problems . . . are not always an excuse"). Thus, "why a claimant failed to

undergo treatment is one factor to consider when assessing an impairment, but the burden was on [Plaintiff] to explain why she was disabled as a result of her [impairments]. [Plaintiff] failed to satisfy her burden. This is especially true considering [she] was represented by counsel throughout the pendency of the proceedings." *Pepper*, 712 F.3d at 367.

The ALJ's credibility assessment contains a minor error, in that it appears that Plaintiff left one job due to a buyout and claimed that she left her most recent job as a cashier due to a "TIA accident" (Tr. 23). However, the ALJ did not place great weight on this purported inconsistency, and she provided numerous valid reasons for discounting Plaintiff's subjective allegations (Tr. 21-23). *See Simila*, 573 F.3d at 517 ("Though the ALJ's credibility determination was not flawless, it was far from 'patently wrong'"; *see also Berger*, 516 F.3d at 546 (while "some of the ALJ's findings regarding" credibility were "a bit harsh," the assessment was affirmed because it had "some support in the record"). Thus, just as "[n]o trial is perfect, no administrative hearing or opinion is either; thus, in analyzing an ALJ's decision, a reviewing court is to look for 'fatal gaps or contradictions' and not 'nitpick' in search of an essentially meaningless misstep." *Masters v. Astrue*, 818 F.Supp.2d 1054, 1065 (N.D. Ill. 2011); *see also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("So the administrative law judge's opinion is vulnerable. But that is nothing new. No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

In summary, the ALJ's credibility determination was not "patently wrong." The ALJ considered the regulatory factors, such as support from objective medical evidence and medical opinions, daily activities, medications, and treatment, and found that Plaintiff's claims were not fully credible (Tr. 21-24). This level of explanation is sufficient to to affirm this assessment.

## 2. The ALJ Reasonably Weighed the Medical Opinions

Plaintiff first argues that the ALJ's RFC finding gave insufficient credit to the opinion of Brian London, Ed.D. H.S.P.P., an examining source. Pl. Br. 13-15. However, it is unclear what, if any, aspects of Dr. London's opinion that Plaintiff believes should have been credited. In this regard, her argument does not discuss the substance of his opinion or point to any specific findings that contradict the ALJ's RFC assessment. *See* Pl. Br. 13-15.

Moreover, and, as explained above in the discussion of the ALJ's findings at step two, the ALJ reasonably contrasted the results of this one-time examination with the rest of the record evidence (Tr. 19). For example, the ALJ explained that a GAF score is merely a snapshot of a particular moment and does not correlate with any specific work-related limitations of function (Tr. 19-20). The ALJ further explained that Plaintiff's daily activities were not limited by her mental impairments and that she could care for her dog, use a computer, communicate with family and friends, and read regularly (Tr. 19). Plaintiff's mental impairments had not affected her social functioning; she talked to family and friends daily and had never had problems at work due to interpersonal difficulties (Tr. 19). And the ALJ explained that Plaintiff could pay bills without problem, did not need reminders to attend appointments, and acknowledged that she could pay attention for up to 30 minutes at a time (Tr. 19). The ALJ also discussed the evidence of memory loss, and found that, except for low average Visual Working Memory and Delayed Memory, Plaintiff had average memory abilities (Tr. 20). The ALJ noted that Plaintiff did not complain of memory loss to her doctors and a June 2011 neurologic examination showed that Plaintiff's "recent and remote memory, attention span and concentration, and fund of knowledge was grossly intact." (Tr. 20). Plaintiff argues that she had mental health services in 1992, which has no apparent relevance to whether she was disabled in 2011. Pl. Br. 14. She further argues

that she had "suicidal thinking," Pl. Br. 14, but the very next sentence in the report Plaintiff quotes states that she "expressed a future orientation" and "referenced her grandchild as one reason to continue living" (Tr. 393).[1] Thus, the ALJ explained why she disagreed with Dr. London's opinion of moderate symptoms. *See Henke v. Astrue*, 498 F. App'x 636, 640 n.3 (7th Cir. 2012) ("[t]he ALJ did not explicitly weigh every factor while discussing" the medical opinions, he "did note the lack of [supporting] medical evidence . . . and its inconsistency with the rest of the record. This is enough.").

Plaintiff next argues that the ALJ erred in evaluating the opinion of Shayne Small, M.D., who performed a consultative examination in August 2011. Pl. Br. 15-16. It is difficult to follow the logic of Plaintiff's argument here; it appears she may be arguing that the clinical findings of 18/18 tender points and tenderness in her hands shows that she was more limited than the ALJ found. Such an argument fails, however, because Dr. Small, after considering her own clinical findings, opined that Plaintiff "is able to perform normal movements like walking, sitting, squatting, bending, hand movements, manipulative movements with hands and feet, able to grasp objects and able to get on/off the table without assistance" (Tr. 403).

Moreover, Plaintiff's own statements about pain is not the type of objective medical evidence the regulations call for. *See* 20 C.F.R. § 404.1528. "Clinical signs" are medically demonstrable phenomena and they "must be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 404.1528(b). While "a sharp distinction between signs and

---

[1] Plaintiff cannot "accuse an ALJ of skipping medical records, then raise *Chenery* as a bar to any consideration by the Commissioner or the court of the importance of those records." *Schurr v. Colvin*, No. 12-969, 2013 WL 1949615, *14 n. 10 (E.D.Wis. May 9, 2013). The Commissioner may thus argue that Plaintiff's cited evidence does not support the claim asserted. *See Schmidt v. Colvin*, No. 13-174, 2014 WL 907419, *8 (E.D. Wis. Mar. 7, 2014) (rule prohibiting argument about uncited evidence "would also confer an unfair advantage on the claimant" who invariably "cites to evidence not referenced by the ALJ that he thinks is contrary to the [ALJ's] decision.").

symptoms cannot always be found," some essential distinctions are that signs "can be elicited in response to a stimulus or action by the clinician" and "require professional skill and judgment to evaluate their presence and severity as opposed to the mere noting and reporting of an individual's statements." POMS DI 24501.020(B); *see also Farrell v. Sullivan*, 878 F.2d 985, 989 (7th Cir. 1989) (physician's "observations" which were in fact "mere recitations" of claimant's complaints is not objective medical evidence). Plaintiff's argument confuses her subjective statements to Dr. Small with a medical opinion about her impairments' severity and, as explained above, the ALJ reasonably discounted the former for several reasons (Tr. 21-24). Thus, the ALJ did not err in evaluating the medical opinions, and Plaintiff's arguments here essentially recycle her attack on the ALJ's credibility determination.

### 3. Plaintiff Has Not Shown that She Was More Limited than the ALJ Found.

The ALJ, in describing Plaintiff's nonsevere impairments, noted that "there is no persuasive evidence in the record to establish that these impairments or any symptoms arising thereof continuously cause significant limitations" (Tr. 17). Plaintiff has not established that her various impairments met the Act's duration requirement and has otherwise failed to show that she had greater work-related limitations than indicated in the ALJ's RFC finding. *See Pepper*, 712 F.3d at 363; *Henderson*, 179 F.3d at 512 n.3.

As an initial matter, Plaintiff failed to address the ALJ's finding that most of her alleged impairments pre-date her alleged onset of disability and were not shown to limit her ability to work in the past (Tr. 17-18, "Thus, while the claimant has been diagnosed with these impairments in the past, I find that they do not affect the claimant's ability to perform basic work-related functions"; Tr. 20, "[A] detailed earnings record shows the claimant worked at SGA for several years with 'chronic pain and fatigue' . . . In January 2011, the claimant

indicated that [her symptoms were] worse; however, she was continuing to work SGA"). For example, Plaintiff cites a clinical finding about her back from 2006, and asserts that it "may require a sit-stand option" Pl. Br. 7 (*citing* Tr. 535). But Plaintiff did not show that she needed a sit-stand option when she worked in the past, and she did not adduce evidence of worsening conditions (Tr. 20). She cites a medical record from 2005 that she needed an audiology referral without introducing any evidence that it affected her ability to work for six years thereafter. *See* Pl. Br. 10 (*citing* Tr. 522-23). Plaintiff cites a 2010 medical record about plantar fasciitis, without addressing the fact that she worked for a year after this or, as explained below, showing that it met the Act's duration requirement because the symptoms lasted or were expected to last for a continuous period of at least 12 months. *See* Pl. Br. 8 (*citing* Tr. 436-37). And Plaintiff relies on a 2005 reports worsening hand pain for a year, which does not show she was disabled in 2011 or that she would be unable to do the work for the many years before that. *See* Pl. Br. 8 (*citing* 520-21). Thus, the ALJ's finding that most of Plaintiff's impairments did not render her disabled is supported by the fact that she worked with these impairments for years. *Castile*, 617 F.3d at 927-28; *Berger*, 516 F.3d at 546 (work activity cut against claimant's testimony that he was unable to work; *Williams-Overstreet*, 364 F. App'x at 276-77 ("Although a claimant with a job may still be found disabled," that possibility does not mean it is true in most cases).

      Moreover, Plaintiff overlooks the ALJ's findings about the Act's duration requirement (Tr. 17). "Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). For an impairment to be deemed "severe," it must interfere (or be expected to interfere) with basic work activities over a continuous 12-month period. *See* 20 C.F.R. § 404.1520(a)(4)(ii). An

ALJ's RFC assessment need only consider those impairments and limitations that satisfy the Act's definition of disability, including the duration requirement. *See* Social Security Ruling 96-8p (the "Act requires that an individual's inability to work must result from the individual's physical or mental impairment(s)," and thus an ALJ "must consider only limitations and restrictions attributable to medically determinable impairments"). Accordingly, for Plaintiff to show that the ALJ was required to discuss these alleged impairments, she must first show that they satisfy this threshold requirement, which she has not done. For example, Plaintiff claims that she has obstructive sleep apnea, Pl. Br 8, but her doctor indicated that she "showed no significant sleep disordered breathing or periodic leg movement during sleep" and that her problem was "situational depression and periodic insufficient sleep" (Tr. 615). Likewise, Plaintiff claims that she had problems with glaucoma, Pl. Br. 8, but has not shown consistent symptoms since May 2011, when her disability allegedly began (Tr. 18). Thus, Plaintiff has not shown that her alleged impairments had limiting effects for a continuous twelve-month period.

Plaintiff argues that she was unable to do her past work due to limitations in using her hands. Pl. Br. 9. However, the ALJ considered Plaintiff's complaints of hand pain and noted that it was medically managed with painkillers, other medications, and wrist splints (Tr. 22); she had normal ability to grasp and perform fine finger movements on clinical examination (Tr. 22); these allegations of pain did not prevent her from doing past work at SGA levels through 2011 (Tr. 22-23), whereas she had been instructed to wear splints in June 2002 (Tr. 495-96). Thus, the ALJ reasonably found that Plaintiff's hand problems would not prevent her from doing her past work because, in fact, she did that work with the very same problems (Tr. 22).

Plaintiff claims that she would be unable to perform her past relevant work because of the specific vocational preparation (SVP) levels of her past work. Pl. Br. 7. SVP is the amount of

lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job. But Plaintiff does not contest that the ALJ's finding that she performed each of her past jobs long enough to learn how to do them (Tr. 24-25). Accordingly, the SVP levels of Plaintiff's past work are immaterial because she has *already learned* how to successfully perform those jobs, and there is no evidence that Plaintiff has forgotten how to be a cashier or receptionist.

Plaintiff has not met her burden of showing that she was more limited than the ALJ found. As the ALJ explained, no doctor opined that Plaintiff was disabled or was unable to perform a restricted range of light work (Tr. 23). For many of her impairments, Plaintiff cites her subjective statements to her doctors as objective proof without fully addressing the ALJ's adverse credibility determination. And for the other impairments, Plaintiff speculates about work-related limitations, such as a sit/stand option, without any supporting evidence. *See Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008) (claimant must demonstrate how impairments "further limited [his] functioning"); *see also Richards v. Astrue*, 370 F. App'x 727, 733 (7th Cir. 2010) (rejecting claimant's speculation about how an impairment might affect her functioning without showing "that any of those examples apply" in her case).

Finally, the Commissioner need only show that Plaintiff was capable of performing one past job, either as it was actually performed or generally performed in the national economy. *See* 20 C.F.R. § 404.1560. Here, Plaintiff's past job as a photograph printer was sedentary work, as generally performed in the national economy (Tr. 24-25, 55). Plaintiff testified that her last job, which she performed at SGA levels through at least January 2011 (Tr. 22), had her on her feet the entire day and using her hands constantly. (Tr. 50, "Q: As a cashier at Kroger, what part of the day were you on your feet? A: The full – whole time. Q: Were you using your hands that

entire time? A: Constantly. Q: What was the heaviest thing you think you had to lift as a cashier/checker? A: 24 pack of Coke"). Thus, it was reasonable for the ALJ to conclude that Plaintiff could still perform a sedentary job that entailed lifting no more than 10 pounds, standing no more than 2 hours per day, and only frequently using her hands (Tr. 24, ALJ finding that Plaintiff could perform past relevant work of photograph printer; Tr. 53-54, VE testifying that this job was sedentary as generally performed in the national economy). Thus, the Court should affirm the Commissioner's decision that Plaintiff was not disabled at step four of the sequential evaluation process because, at a minimum, she retained the ability to do this sedentary job. *See, e.g.*, *Anderson v. Bowen*, 868 F.2d 921, 925 n.11 (7th Cir. 1989) (claimant must show not only that he cannot perform his past relevant work as he actually performed it but also that he cannot perform it as the job is generally performed as described in the Dictionary of Occupational Titles and therefore it is not determinative that the claimant actually performed his past relevant work at an exertional level higher than the DOT description of his job as usually performed).

## CONCLUSION

For the reasons stated above, the Commissioner respectfully requests that this Court affirm his decision.

                                              Respectfully submitted,

                                              JOSH J. MINKLER
                                              United States Attorney

                   By:    /s/ *Thomas E. Kieper*
                                              Thomas E. Kieper
                                              Assistant United States Attorney

Of Counsel:

Kathryn Caldwell
Acting Regional Chief Counsel

Eric Truett
Assistant Regional Counsel
Social Security Administration
200 West Adams Street, 30th Floor
Chicago, IL 60606

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2015, I electronically filed the foregoing **MEMORANDUM IN SUPPORT OF COMMISSIONER'S DECISION** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

> Jennifer M. Hess
> jenhessatty@aol.com

and hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant:

> NONE.

/s/ *Thomas E. Kieper*

Thomas E. Kieper
Assistant United States Attorney

Office of the United States Attorney
10 West Market Street, Suite 2100
Indianapolis, IN  46204-3048
Telephone: 317-226-6333