UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CAROL J. GODDARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No.  1:14-cv-1758-WTL-DML |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

### ENTRY ON JUDICIAL REVIEW

Plaintiff Carol J. Goddard requests judicial review of the final decision of the Defendant, Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Goddard's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act.  The Court, having reviewed the record and the briefs of the parties, rules as follows.

### I.  APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A).  In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b).[1] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not

---

[1] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

## II. BACKGROUND

Goddard protectively filed for DIB on July 13, 2011, and SSI on July 15, 2011, alleging that she became disabled on May 13, 2011, primarily due to fibromyalgia, chronic fatigue, IBS, depression, transient ischemic attack (gray matter abnormality), blurred vision and glaucoma in her eyes, arthritis in her hands, tension headaches, memory loss, and osteopenia. Goddard was born on December 6, 1951, and she was fifty-nine years old on the alleged disability onset date. Goddard has a GED, and she has past relevant work experience as a customer service clerk, photograph printer, laboratory chief, receptionist, inventory clerk, and cashier/checker.

Goddard's application was denied initially on August 23, 2011, and upon reconsideration on November 23, 2011. Thereafter, Goddard requested and received a hearing in front of an Administrative Law Judge ("ALJ"). A hearing, during which Goddard was represented by counsel, was held by ALJ Monica LaPolt on October 23, 2012. After the hearing, vocational interrogatories were sent to a vocational expert, who responded on January 8, 2013. This evidence was proffered to Goddard on January 17, 2013, and she responded on January 28, 2013, and requested a supplemental hearing. On May 20, 2013, a supplemental hearing was held. Goddard was present and represented by counsel. The ALJ issued her decision denying Goddard's claim on June 27, 2013; the appeals council denied Goddard's request for review on August 27, 2014. Goddard then filed this timely appeal.

### III. THE ALJ'S DECISION

The ALJ determined that Goddard met the insured status requirements of the Social Security Act through June 30, 2015. The ALJ determined at step one that Goddard had not engaged in substantial gainful activity since May 13, 2011, the alleged onset date. At steps two and three, the ALJ concluded that Goddard had the severe impairments of "fibromyalgia and osteoarthritis," Record at 17, but that her impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ determined that Goddard had the RFC to perform light work with certain limitations:

> I find that the claimant has the residual functional capacity to perform light work . . . except she can occasionally stoop, crouch, crawl, and climb ramps or stairs; and never climb ladder, ropes, or scaffolds.

*Id.* at 21. Given this RFC, the ALJ determined that Goddard could perform her past relevant work as a customer service clerk, photograph printer, laboratory chief, receptionist, inventory clerk, and cashier/checker. Accordingly, the ALJ concluded that Goddard was not disabled as defined by the Act.

### IV. EVIDENCE OF RECORD

The medical evidence of record is aptly set forth in Goddard's brief (Dkt. No. 14) and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

### V. DISCUSSION

In her brief in support of her complaint, Goddard advances several objections to the ALJ's decision; each is addressed below.

### A. Credibility

Goddard argues that the ALJ's credibility determination are "improper and contrary to the record." Dkt. No. 14 at 16. In determining credibility, an ALJ must consider several factors, including the claimant's daily activities, level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529(c); S.S.R. 96–7p, and justify her finding with specific reasons. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). "Furthermore, the ALJ may not discredit a claimant's testimony about [her] pain and limitations solely because there is no objective medical evidence supporting it." *Id.* (citations omitted). District courts "afford a credibility finding 'considerable deference,' and overturn it only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)).

Goddard takes issue with what she argues is the ALJ's apparent "penaliz[ing] the claimant or hold[ing] a prejudice against her for working while in pain alluding to her being a malinger[er] for indicating 'chronic pain and fatigue' while working." Dkt. No. 14 at 16. She argues that the ALJ "appears to disregard the claimant's pain." *Id.* at 17. The ALJ does discuss Goddard's pain; however, as Goddard points out, her conclusion is not supported by the record as a whole.

Specifically, Goddard takes issue with the ALJ's characterization of her prior treatment for pain. An ALJ can consider infrequent treatment or failure to follow a treatment plan, but "must not draw any inferences about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (internal quotation marks omitted). As Goddard points out, the ALJ incorrectly states that Goddard did not engage in "alternative treatment modalities such as

acupuncture, hot/cold therapy, or chiropractic care." R. at 23.  In fact, Goddard did receive chiropractic care. R. at 654-62.

Further, the ALJ ignored Goddard's testimony that the lack of treatment and prescriptions was due to Goddard's lack of medical insurance and inability to afford treatment. *See Craft*, 539 F.3d at 679 (7th Cir. 2008) (ALJ should have considered claimant's "inability to pay for regular treatment and medicine"); SSR 96–7P, 1996 WL 374186, at *7 (ALJs must consider "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment"); *Beardsley v. Colvin,* 758 F.3d 834, 840 (7th Cir. 2014) (remanding to agency where ALJ made no attempt to determine reason for conservative treatment).

Goddard also points out the ALJ discredits Goddard's credibility in part due to Goddard's explanation for why she stopped working: "At the hearing, the claimant said she stopped working following a TIA accident. However, during her psychological evaluation, she reported that she lost her job because of a 'buy out' (Ex. 4F at 5). This evidence also weights against the claimant's credibility." R. at 23. As Goddard indicates, the ALJ was incorrect in her understanding of Goddard's testimony. In fact, Goddard consistently had stated that she had lost a previous job due a buyout but had lost her most recent job following a TIA.

The ALJ's credibility determination is patently wrong, as it is not supported by the record as a whole. Remand is thus required.

### B.  Consultative Sources

Goddard also argues that the ALJ did not give sufficient weight to the opinion of consultative psychological examiner Dr. Brandon London. The ALJ stated, "I give little weight to the consultative psychological examiner's opinion the claimant was functioning with moderate

6

symptomatology because it is inconsistent with his own clinical findings and the claimant's lack of mental health treatment." R. at 24. The ALJ then discusses Goddard's GAF score. Because he was not a treating physician, Dr. London's findings were not entitled to controlling weight. However, on remand, the ALJ should explain why she believes London's opinion is inconsistent with his own findings. She should also ensure that she considers Goddard's documented mental health treatment.

Further, Goddard notes that consultative examiner Dr. Shayne Small did not have Goddard's complete medical records. However, the consultative examiner did not express an opinion. Rather, as the ALJ found, he "recorded the objective findings present to his comprehensive physical examination." R. at 24. Thus, the ALJ did not err in giving weight to his findings.

### C.  The Claimant's Remaining Claims

On remand, in conjunction with reexamining the above issues, the ALJ should (1) consider and address whether other medically determinable impairments Goddard alleged but the ALJ did not mention affect her analysis, including her RFC assessment; (2) fully analyze whether Goddard meets or equals a listing for the severe impairments of osteoarthritis and fibromyalgia; (3) re-examine and analyze whether the claimant's anxiety and depression were severe impairments.

### VI.   CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED AND REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 1/11/16

_____William T Lawrence_____

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

Case 1:14-cv-01758-WTL-DML Document 21 Filed 01/11/16 Page 8 of 8 PageID #: 814